Carlos A. **CRUZ–BAEZ,**
et al., Plaintiffs,

v.

Isidro **NEGRON–IRIZARRY**
et al, Defendants.

Civil No. 01–1619(DRD).

United States District Court,
D. Puerto Rico.

March 8, 2005.

Eliezer Aldarondo–Ortiz, Ivan M. Castro–Ortiz, Simone Cataldi–Malpica, Aldar-

ondo & Lopez Bras, Guaynabo, PR, for Plaintiffs.

Wanda I. Acosta–Ocasio, San German, PR, pro se.

Epifania Guzman–Cruz, San German, PR, pro se.

Luz M. Baez–Garcia, San German, PR, pro se.

Johanna M. Emmanuelli–Huertas, Pedro Ortiz Alvarez Law Offices, Ponce, PR, Marie L. Cortes–Cortes, Llovet Zurinaga & Lopez, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Plaintiffs filed suit against co-defendants [1] pursuant to 42 U.S.C. § 1983, alleging violations to their constitutional rights as guaranteed in both the Federal Constitution and the Constitution of the Commonwealth of Puerto Rico. Further, plaintiffs claim damages pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico. 31 P.R. Laws Ann § 5141 and 5142. In essence, plaintiffs sustain they were object of an adverse employment action due to their political beliefs.

Pending before the Court is defendants' *Motion for Summary Judgment* (Docket No. 64). Defendants claim plaintiffs failed to establish a *prima facie* discrimination case, they had a valid reason for the adverse employment action toward all plaintiffs, and they are entitled to qualified immunity. Plaintiffs duly opposed defendants' request (Docket No. 75). After referring this matter to Magistrate Judge Gustavo Gelpí (Docket No. 72), a Report and Recommendation was issued (Docket No. 81), recommending this Court to grant

---

1. Although the case initiated with a long list of co-defendants only three remain: The Municipality of San German, Isidro Negron Iri-zarry (the mayor) and Ramón Segarra (Human Resources/Personnel Director).

in part and to deny in part defendants' request for brevis disposition.

## I. The Magistrate's Report and Recommendation

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED. R.CIV.P. 72(b); Rule 72(4), Local Rules, District of Puerto Rico. *See Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Of course, an adversely affected party may contest the Magistrate's Report and Recommendation by filing it's objections with ten (10) days after being served a copy thereof. *See* Local Rule 72(d); FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent, part provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

"Failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir., 1992). *See also Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir., 1994)(holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir., 1993)(stating that "[o]bjection to a magistrate's report preserves only those objections specified"); *Keating v. Secretary of H.H.S.,* 848 F.2d 271, 275 (1st Cir., 1988); *Borden v. Secretary of H.H.S.,* 836 F.2d 4, 6 (1st Cir., 1987)(holding that appellant was entitled to a *de novo* review, "however, he was not entitled to a *de novo* review of an argument never raised"). *See generally United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir., 1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir., 1980).

Since both parties duly objected to the Magistrate's Report and Recommendation, the Court hereby reviews, *de novo,* defendants' request for summary disposition.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.,* 110 F.3d 174, 178 (1st Cir., 1997). After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir., 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment,

could resolve the dispute in that party's favor." *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir., 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood. . . ." *Greenburg v. Puerto Rico Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir., 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir., 1997).

Finally, when considering this motion, unsettled issues of motive and intent as to the conduct of any party—as may arise in actions under § 1983—will normally preclude the Court from granting summary judgment. *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 677 (1st Cir., 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury") (internal quotation marks omitted) (citation omitted); *see also Tew v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1551, 1555 (S.D.Fla.1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.' "). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be

appropriate if the nonmoving party rests merely upon ·conclusory allegations, improbable inferences [or] unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir., 1996).

## III.

After a careful analysis of defendants' request for summary disposition and plaintiffs' opposition thereto, Magistrate Judge Gustavo A. Gelpí recommended the Court to grant in part and deny in part defendants' request.

Defendants object to the Magistrate's Judge Report and Recommendation "as it lacks any specific findings of fact." *Opposition to Magistrate Judge's Report and Recommendation* (Docket No. 83, p. 1). Accordingly, defendants sustain the Magistrate Judge's report failed to achieve its purpose. Defendants further aver the Magistrate Judge disregarded the adequate standard in order to create genuine issues of material fact. Defendants aver plaintiffs failed to proffer sufficient evidence in order to create a material issue that would preclude the issuance of summary disposition. Id. at p. 1–2.

Plaintiffs, on the other hand, object to the Magistrate Judge's determination as to his recommendation of issuance of brevis disposition as to plaintiffs Carlos Cruz Baez, Felix Casiano and María del Carmen Vargas. *Plaintiffs' Partial Objection to the Honorable Magistrate–Judge Gustavo Gelpi's Report and Recommendation Regarding Defendant's Motion for Summary Judgment* (Docket No. 82, p. 1).

■ Provided that both, plaintiffs and defendants, objected to the Magistrate Judge's Report and Recommendation (Docket Nos. 82 and 83), the Court shall make a *de novo* determination of the matters discussed in the alluded Report and Recommendation.

## A. General Factual Background

In Plaintiff's complaint filed pursuant to § 1983, plaintiffs assert they were removed or demoted in their jobs due to their political affiliation, in violation of their First Amendment rights.[2] Plaintiffs sustain that they are all active members of the New Progressive Party (hereinafter "NPP"), the political party that governed the Municipality of San Germán until the 2000 elections when former NPP Mayor Isaac Llantín was defeated by the opposing party's, the Popular Democratic Party (hereinafter "PDP") candidate, Mayor Isidro Negrón Irizarry. Plaintiffs, formerly employed by the Municipality of San Germán, aver they were victims of political discrimination under the First Amendment which ultimately resulted in the loss of their employment or their positions.

Co-defendant, Municipality of San Germán, is a local government entity within the Commonwealth of Puerto Rico. On November 7, 2000, a general election was held in Puerto Rico. The incumbent mayor of the Municipality of San Germán, Isaac Llantín, candidate for the NPP, was replaced by co-defendant Isidro Negrón Irizarry, the candidate for the PDP.

On January 9, 2001, co-defendant Isidro Negrón Irizarry took office as the new Mayor of San Germán. Co-defendant Negrón Irizarry appointed co-defendant Ramón Segarra, as Director of Human Resources for the Municipality of San Germán. Segarra, a PPD follower, has never been actively involved in politics and has never been involved in political campaigns. Co-defendant José Nazario, former Di-rector of Recycling for the Municipality of San Germán, is affiliated to the NPP.

## B. Law 52's Employees (EODF)

Plaintiffs, Carlos Cruz Báez, Jesselle Justiano Rosario, Elliot Colón Johnson, Marla Colón Johnson, Julia Madera Tirado, Juan Jusino Amely, Nélida Báez Pérez, Santos Ayala Melero, Sylvia Flores Morales, Santos Olivera Rivera, Nery Casiano Rosado, Felipe Vélez Valle, and José Luis Berrocales were employed pursuant to the Employment Opportunities Development Fund ("EODF"). 29 P.R. Laws Ann. § 711(c) (hereinafter 'Law 52').

Law 52 of August 9, 1991 established an Employment Opportunities Development Fund to be used in order to promote working opportunities. 29 P.R. Laws Ann. § 711(b). The moneys of the fund are to be used for the creation of employment and opportunities program in the public and private sector. 29 P.R. Laws Ann. § 711(c). Law 52 is a "vehicle through which the Commonwealth subsidize[s] locally managed programs to ameliorate unemployment". Gómez v. Rivera Rodríguez 344 F.3d 103, 107 (1st Cir., 2003).

In the instant case, the grant funding the Law 52 (EODF) contracts of the previously mentioned plaintiffs expired on December 31, 2000. Said employees were informed by letter dated December 7, 2000 and issued by the then Human Resources Director María C. Cerra, their EODF or Law 52 contracts and thus their appointments were to expire on December 31, 2000.

On December 11, 2000, Mayor-elect Isidro Negrón Irizarry signed a proposal for an EODF grant to fund **eighty (80) posi-**

---

**2.** See *Sánchez López v. Fuentes Pujols,* 375 F.3d 121, 125 (1st Cir., 2004)("entirely too often, [in Puerto Rico] the political party assuming office terminates the employment of public employees who are affiliated with the party going out of power and then fills those vacancies with its own members. By the same token, the outgoing party attempts to secure the continued tenure of its members in public jobs through a variety of devices, such as … making appointments in violation of Puerto Rico law.")

tions, the same number of positions funded under the prior grant. The positions funded by the previous grant included: Aide to the Mayor (2); Supervisor (4); Administrator (3); Coordinator of Services (2); Worker(a)-(5); Worker (b)-(40); Office Clerk (8); Watchman (2); Recreational Leader (6); Chaffeur (5) and Worker (c)-(3).[3] However, on February 1, 2001, the Department of Labor approved an EODF grant for the Municipality of San Germán providing funding for only **sixty five (65) positions.** Among them were the following: Worker (33); Housekeeper (20); Nurse (3); Mechanic (3); Recreational Leader (4) and; Chauffeur (2). Of the eighty (80) EODF (Law 52) workers, whose appointments ended on December 31, 2000, only fifteen (15) were re-appointed to positions under the February 1, 2001 EODF (Law 52) grant.[4]

In the instant case, thirteen (13) of the plaintiffs were former EODF (Law 52) workers who were not re-appointed to positions funded by the EODF (Law 52) grant effective February 1, 2001. Defendants sustain said thirteen (13) plaintiffs are not able to establish a prima facie case of discrimination, some of them failed to request to be re-hired, or could not establish co-defendants knew their political affiliations. Further, defendants aver there is evidence that NPP followers were appointed to EODF positions, hence, no political discriminatory animus may be inferred, and plaintiffs failed to offer any independent evidence of discriminatory animus. Defendants also submit independent legitimate reasons (Mt Healthy defenses) as to

some of these plaintiffs that justify the Municipality's decision not to rehire certain plaintiffs including, lack of funding, certain plaintiff's failure to perform his/her obligations in a responsible way and some plaintiffs' ineligibility to be re-employed as municipal employees.

The Magistrate Judge Gustavo A. Gelpí concluded in his R & R that each of the Law 52 employees (13 of the plaintiffs) proffered sufficient evidence to establish a prima facie case of political discrimination. The Magistrate Judge concluded each of these plaintiffs established their involvement in political activities in support of the NPP, each of them suffered an adverse employment action and alleged being replaced with a supporter of the new administration party. The Magistrate Judge then independently addressed each of the alleged legitimate justifications provided by the defendants.

Defendants objected to the Magistrate Judge's determination. Defendants sustain plaintiffs failed to proffer evidence to survive the Motion for Summary Judgment. Further, defendants aver the Magistrate Judge completely disregarded the amount of former transitory employees appointed under the past administration who were re-appointed to the new positions created under the Law 52, February 1, 2001. Accordingly, defendants claim said evidence precludes an inference of political discrimination. Furthermore, defendants contend plaintiffs failed to produce any evidence that would lead to the conclusion defendants actions were motivated by plaintiffs' political affiliation. Finally, de-

---

**3.** Defendants' statement of uncontested facts ¶ 10 includes three different categories of workers. They are not included in one group since their compensation varied depending of the hours worked.

**4.** Twenty (20) former transitory and irregular municipal employees whose contracts likewise expired on December 31, 2000 were also appointed to EODF (Law 52) positions. Twelve (12) former transitory and irregular municipal employees who had been appointed by Mayor Llantín, were appointed by Mayor Negrón as transitory or irregular municipal employees.

fendants argue plaintiffs failed to proffer any evidence, besides the recitation of their names of their alleged replacements to establish they were replaced by members of the PDP, hence failing to establish a prima facie case of discrimination.

Since the Magistrate Judge's Report and Recommendation was duly objected, the Court reviews *de novo* defendant's request for brevis disposition. *Lewry v. Town of Standish*, 984 F.2d at 27. After a careful review of defendants' motion and plaintiffs opposition thereto, the Court found the following information as to each Law 52 plaintiff.

### C. Factual Background for Each Plaintiff

a. Plaintiff **Carlos Cruz Báez** is an NPP affiliate who had been actively involved in NPP activities, including being part of the political team of former Mayor Llantin at the NPP 2000 elections. Cruz Baez was a municipal employee pursuant to a Law 52 contract. His contract was reiteratedly renewed until his last contract expired on December 31, 2000. Plaintiff sustains employees at the Municipality knew his political affiliation. Notwithstanding, defendants assert Mayor and Negrón had no knowledge of his political affiliation. Cruz Baez sustains Mayor Negrón appointed several PDP followers to do Law 52 work.[5] Cruz Baez was once separated from a state government position as a Juvenile Custody Officer for being convicted of aggravated assault.

b. Plaintiff **Jesselle Justiniano Rosario** worked as an electoral college functionary for the NPP in the1996 and 2000 elections. Plaintiff sustains employees in the Municipality knew her political affiliation.

However, defendants assert Mayor Negrón had no knowledge as to her political affiliation. Her Law 52 (or EODF) contract with the Municipality of San Germán was reiteratedly renewed until her contract expired on December 31, 2000. Her last appointment, that lasted from July 1, 2000 to December 31, 2000, was as an Office Clerk. She was assigned to the Department of Education. Upon the expiration of her last contract, she was not appointed to any position funded by the subsequent grant. Justiniano Rosario claims that, although she requested to be reappointed, Mayor Negrón appointed PDP followers to Law 52 contracts.

c. Plaintiff **Elliot Colón Johnson** was a Municipal employee pursuant to a Law 52 whose contract was always renewed until his last contract expired on December 31, 2000. Colón Johnson worked as an electoral college functionary for the NPP in the 1999 primaries and the 2000 elections. He is an active member of the NPP. He also sustains that although he requested to be reappointed, the Municipality appointed several PDP followers to Law 52 positions. Plaintiff claims employees in the Municipality knew his political affiliation. However, defendants assert that Mayor Negrón had no knowledge of his political affiliation. During his employment as a Law 52 worker, plaintiff Colón Johnson received a written reprimand from his supervisor for disorderly conduct that resulted in damage to Municipal property.

d. Plaintiff **Marla Colón Johnson's** last EODF contract lasted from July 1, 2000 to December 31, 2000. She was a worker at the Property Registry. She was

---

**5.** Among them, he mentions as PDP adherents Jaime Román Montalvo, Betty Santana, Pablo Ivan Salas, Brenda Arlequín, Ana Medina, Anthony Santiago, Pedro Flores Vázquez, Nelson Cruz, Mario Cintrón, María Santana, José Santiago and Grace Cuevas. Besides plaintiff's sworn statement that said persons are PDP affiliates no other independence evidence was presented as to this fact.

actively involved in several NPP activities, and was part of the advance team of former Mayor Llantín. She further appeared in a television commercial with Mayor Llantín and former PNP President, Carlos Pesquera. However, defendants assert that Mayor Negrón had no knowledge as to her political affiliation. In 2000, she applied for a position of office clerk, but was not appointed. Colón Johnson's Law 52 contract was constantly renewed until her last appointment expired on December 31, 2000. She also sustains that, although she requested to be called back to work as an Law 52 employee, Mayor Negrón hired PDP supporters.

e. Plaintiff **Julia Madera Tirado** is an NPP activists who participated in several NPP activities. Although she asserts employees in the Municipality knew her political affiliation, defendants sustain Mayor Negrón had no knowledge of her political affiliation. Madera Tirado's Law 52 contract was always renewed until her last contract expired on December 31, 2000. Although she requested to be to be called back for work, she sustains Mayor Negrón employed PDP supporters to occupy Law 52 vacancies. Her last employment as a Law 52 employee was as an office clerk at the Public Library. On September 17, 1999, she received a written reprimand for physically assaulting a supervisor in her department.

f. Plaintiff **Juan Jusino Amely** is an NPP affiliate who worked as an electoral college functionary for the NPP in the 2000 elections. He participated in several political activities. Although he asserts employees in the Municipality knew his political affiliation, Mayor Negrón denies having knowledge as to the same. He also

sustains that, although he notified his availability to work, Mayor Negrón hired PDP affiliates.[6]

g. Plaintiff **Nélida Baez Pérez** is an active NPP supporter who participated in several NPP activities. She also sustains municipality employees knew about her political affiliation. However, defendants assert Mayor Negrón had no knowledge of her political affiliation. She contends that, although she requested to be called back for work, Mayor Negrón appointed PDP followers to Law 52 positions. Baez Pérez's last EODF appointment was as an office clerk at the State Department of Family.

h. Plaintiff **Santos Ayala Melero** is an NPP activist who, ever since he had the right to vote, had voluntarily worked on every election for the NPP. He had also participated in several political activities. Plaintiff Ayala Melero sustains employees in the Municipality knew his political affiliation. However, defendants assert Mayor Negrón had no knowledge of his PNP political affiliation. His contract as a Law 52 employee was repeatedly renewed until his last appointment expired on December 31, 2000. Plaintiff Ayala Melero asserts he took all the necessary steps to notify the people at the Municipality he was willing to continue working under Law 52 employment, but the Mayor was never available.

i. Plaintiff **Sylvia Flores Morales** is an NPP activist who had an EODF position as an office clerk assigned to work at a school. Plaintiff sustains employees at the Municipality knew of her political affiliation. Besides participating in several political activities, her house is visibly identified with NPP propaganda. Howev-

---

**6.** Plaintiff Jusino Amely claims Leandro Rivera and Ismael Irizarry, both affiliated to PDP, are performing jobs similar to the job he used to do. It is not established if said em-

ployees already employed by the Municipality or were employed after plaintiff's contract expired.

er, defendant Mayor Negrón asserts no knowledge of her political affiliation. Flores Morales' contract as a Law 52 employee was constantly renewed until her last contract expired on December 31, 2000. However, even though she requested to be called back for employment, she avers Mayor Negrón hired PDP followers to fill her Law 52 position.

j. Plaintiff **Santos Olivera Rivera** is also an NPP activist who has participated in several NPP political activities. He worked as an electoral college functionary for the NPP during the 2000 elections and his house is identified with NPP propaganda. Although plaintiff sustains employees in the Municipality knew of his political affiliation, defendant Mayor Negrón asserts no knowledge of his political affiliation. Olivera Rivera's Law 52 contract in the past always had been renewed until his last appointment as a Mayor's Aide expired on December 31, 2000. Although he requested to be called back for work, he sustains that PDP followers were appointed to his Law 52 position. He claims he was substituted in his position by Puchín Matos who is affiliated to the PDP.

k. Plaintiff, **Nery Casiano Rosado** is an NPP follower who participated in several political activities and whose house and car are identified with NPP propaganda. Plaintiff claims people in the Municipality knew his political affiliation. However, defendant Mayor Negrón asserts no knowledge as to his political affiliation. Casiano Rosado's Law 52 contracts were always renewed until his last appointment, as a laborer at the Public Library. His last contract expired on December 31, 2000. Although Casiano Rosado notified his availability to work as a Law 52 employee, he sustains Mayor Negrón hired PDP followers to his Law 52 position.

l. Plaintiff **Felipe Vélez Valle** has always been an NPP follower who has par-

ticipated in several political activities. Plaintiff sustains people in the Municipality knew his political affiliation. However, defendants Mayor Negrón asserts no knowledge as to the same. His Law 52 contract was constantly renewed until his last appointment expired on December 31, 2000. Plaintiff requested to be called back for work, however, he avers Mayor Negrón hired PDP followers to perform his Law 52 position.

m. Plaintiff **José Luis Berrocales Baez** was actively involved in several NPP political activities. He further even worked as an electoral college functionary for the NPP. Plaintiff sustains people in the Municipality knew his political affiliation. Plaintiff's Law 52 contracts were constantly renewed until his last appointment expired on December 31, 2000. Although Berrocales Baez notified his availability to work as a Law 52 employee, Mayor Negrón hired PDP followers to Law 52 positions. He claims Jaime Román Montalvo, Betty Santana, Pablo Iván Salas, Brenda Arlequín, Ana Medina, Anthony Santiago, Pedro Flores Vázquez, Nelson Cruz, Mario Cintrón, María Santana, José Santiago and Grace Cuevas are PDP followers who were appointed to perform duties equal or similar to those duties he formerly performed. Berrocales Baez admitted that by October 16, 2000 he owed $2,364.00 in child support.

### III. Analysis

Plaintiffs, who were employed pursuant to Law 52, sustain defendants' failure to renew their contracts was the result of political discrimination in violation of their First Amendment rights. Defendants, on the other hand, contend these thirteen (13) plaintiffs had no right to be re-appointed, they failed to establish a prima facie case of discrimination, nine (9) out of the thirteen (13) plaintiffs could not be re-hired due to lack of funding, two (2) out of the

**338**

thirteen (13) were not re-hired due to their conduct during their employment and four (4) out of the thirteen (13) Law 52 employees were not eligible to be municipal employees.

### a. Right to Re-appointment

■ It has been established that Law 52 employees do not enjoy a due process property interest in·their employment beyond the duration of their contract, *Gómez v. Rivera Rodríguez*, 344 F.3d 103, 111 (1st Cir.2003), however, plaintiffs still have a cause of action if they were not re-employed or recalled due to their political affiliation. *See Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673; 49 L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). As noted in *Magistrate Judge Gelpi's Report and Recommendation,*· political patronage "restrains core activities that are essential to the protections provided by the First Amendment of the United States Constitution, such as the freedom of belief and the freedom of association." (Docket No. 81, p. 8) citing *Padilla–García v. Rodríguez*, 212 F.3d 69, 74 (1st Cir., 2000); *Garcia–Sánchez v. Roman–Abreu*, 270 F.Supp.2d 255 (D.P.R.2003); *Berrios–Cintrón v. Cordero*, 976 F.Supp 110, 113·(D.P.R.1997). Such constitutional protection was also extended to transitory· employees so long as employees were not in a policy making position. *Cheveras Pacheco v. Rivera González*, 809 F.2d 125, 127–128 (1st Cir., 1987); *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 56 (1st Cir., 1990)(citing *Branti v. Finkel*, 445 U.S. at 517, 100 S.Ct. 1287). The protection includes Law 52 employees who may not be terminated nor rehired not due to political animus although said employees do not enjoy a property interest. *Gómez v. Rivera Rod-*

7. "Thus, the fact that a transitory employee does not have a reasonable expectation of

*ríguez*, 344 F.3d 103, 110–111 (1st Cir. 2003). Accordingly, plaintiffs covered under Law 52 may still establish a case of discrimination if they establish that defendants' adverse employment action responded to discriminatory reasons. *Gómez v. Rivera Rodríguez*, Id. n. 5.[7]

### b. Failure to Establish a Prima Facie case of Discrimination

Defendants aver plaintiffs failed to establish a *prima facie* case as required in cases of political discrimination. The Magistrate Judge, however, concluded to the contrary. In their objection to the Magistrate Judge's Report and Recommendation, defendants sustain that, in concluding that plaintiffs established a prima facie case, the Magistrate Judge disregarded the absence of a politically charged atmosphere and the fact that more than forty (40) former employees were appointed to positions created in 2001. Further, defendants claim plaintiffs have provided no evidence beyond the mere recitation of the names of their alleged replacements. Defendants also allege there is no evidence any of those alleged replacements were indeed employed in the Municipality in early 2001, or as to their political affiliation.

■ To prevail in a § 1983 claim, plaintiffs have to demonstrate defendants deprived them of their federal constitutional rights, privileges or immunities, while acting under color of state law. *Romero–Barceló v. Hernández–Agosto*, 75 F.3d 23, 32(1st Cir., 1996). In order to establish a prima facie case of political discrimination pursuant to § 1983, plaintiffs have to establish they engaged in a constitutionally protected conduct and this conduct was the motivating factor in the adverse action.

renewal in his or her employment ... does not defeat a first amendment claim."

Id. See also *González–De–Blasini v. Family Department*, 377 F.3d 81, 85 (1st Cir., 2004); *Mt. Healthy City Sch. Dist. Bd. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Further, plaintiffs must demonstrate a causal relation between defendant's conduct and plaintiffs' political beliefs. *LaRou v. Ridlon*, 98 F.3d 659, 663(1st Cir., 1996). That is, "[t]he plaintiff must point 'to evidence on the record which, if credited, would permit a rational finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." *González–De–Blasini v. Family Department* 377 F.3d at 85 quoting *LaRou v. Ridlon*, 98 F.3d at 661 quoting *Rivera–Cotto v. Rivera*, 38 F.3d 611, 614 (1st Cir., 1994). Although circumstantial evidence may be sufficient to support a finding of political discrimination, plaintiffs must make a *fact specific showing* that a causal connection exists between the adverse treatment and their political affiliation. *Avilés–Martínez v. Monroig*, 963 F.2d 2,5 (1st Cir.,1992). *Emphasis added.*

In sum, a plaintiff who claims he or she was a victim of political discrimination "may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory *animus*. It is the plaintiff who bears the initial burden of showing that political discrimination was the motivating factor in the adverse decision." See. *Avilés–Martínez v. Monroig*, 963 F.2d at 5; *Mt. Healthy City School District Board v. Doyle*, 429 U.S. at 287, 97 S.Ct. 568. Only after plaintiffs have established their prima facie case, the burden shifts to defendants who must estab-

lish that they would have taken the same action regardless of plaintiffs' political beliefs. Id. See also, *Sánchez López v. Fuentes Pujols*, 375 F.3d at 131.[8]

The Supreme Court has established a tripartite burden shifting test in cases of political discrimination. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. at 287, 97 S.Ct. 568. The first part requires the plaintiff to establish a *prima facie* case of political discrimination by submitting direct or circumstantial evidence that supports his claim that political affiliation was the primary factor in his employer's adverse decision in terminating his employment. Once this evidence is submitted to the Court, the burden shifts to the defendant to show, by preponderance of the evidence, the decision to terminate employment would have been made regardless of the employee's political affiliation. If the reason proffered by the defendant is credible and nondiscriminatory, the plaintiff is then provided a chance to make a showing that political affiliation "was *more likely than not* a motivating factor." *Padilla–García v. Rodríguez*, 212 F.3d at 74. *Emphasis added.* However, the plaintiffs may still prevail if it is found they would not have received the same treatment 'but for' their political affiliation. *Acosta–Sepúlveda v. Hernández–Purcell*, 889 F.2d 9, 13 (1st Cir., 1989).

After considering defendants' request for summary disposition, plaintiffs' opposition, the pleadings, depositions and answers to interrogatories on file, together with the affidavits and bearing in mind that at all times during the consideration of a motion for summary judgment, the entire record must be examined "in the

---

8. Notwithstanding, different that in Title VII cases, in political discrimination cases pursuant to § 1983 in order to establish a prima facie case of discrimination plaintiffs do not have to necessarily establish that they were substituted by members of the opposing party although, without a doubt, said fact would definitely weight in favor of an inference of discrimination.

light most flattering to the non-movant and indulg[ing] all reasonable inferences in the party's favor." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d at 581, the Court finds that all, but one, of the thirteen (13) Law 52 plaintiffs in the case at bar, satisfied the first part of the *Mt. Healthy* tripartite test.

■ Twelve (12) of the Law 52 plaintiffs established they were employed by the Municipality, they were active political partisans associated with the NPP and they suffered an adverse employment action (they were not re-hired). Further, there is evidence on the record to permit an inference that in the Municipality there was a highly politically charged atmosphere at the beginning of 2001. "The highly charged political atmosphere occasioned by the major political shift from the NPP to the PDP [ . . . ] coupled with the fact that plaintiffs and defendants are of competing parties *may* be *probative* of discriminatory animus." *Acevedo–Diaz v. Aponte*, 1 F.3d 62, 69 (1st Cir., 1993). Further, the level of political activism exhibited by plaintiffs may be a factor in the determination of discriminatory animus. *Id. See Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 706 (1st Cir.,1993) (recognizing evidence that plaintiff was "known" party member); *Ferrer v. Zayas*, 914 F.2d 309, 312 (1st Cir.1990) (acknowledging that plaintiffs' political affiliation was not only "well known" but, in some instances, notorious); *Kercado–Melendez v. Aponte–Roque*, 829 F.2d 255, 264 (1st Cir., 1987)(noting plaintiff's "long, active, and visible membership" in the opposition party).

Furthermore, said plaintiffs stated their political affiliation to the opposing party was well known throughout the Municipality. Although this fact is contested by the defendants as to most plaintiffs, this would be yet another reason to deny the remedy sought since considering a motion summary judgment "admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d at 684 *citing Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d at 936.

Additionally, plaintiffs, through depositions and their answers to interrogatories established they were replaced by employees sympathetic to Mayor Negrón's party. Although defendants allege plaintiffs provided no evidence beyond the mere recitation of the names of their alleged replacements, pursuant to *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, plaintiffs were in no obligation to establish they were substituted by a PDP follower in order to establish their prima facie case, that would only support their allegation of political discrimination. Notwithstanding they provided evidence that, taken in the light most flattering to the non-movant and drawing all reasonable inferences in their favor *Maldonado–Denis v. Castillo–Rodriguez* 23 F.3d at 581, would support this fact. For the reasons previously stated, the Court agrees with the Magistrate Judge Gelpi's conclusion these plaintiffs established a *prima facie* case for political discrimination. But only as to twelve (12) of the thirteen (13) plaintiffs.[9] These

9. Further, there is a genuine issue as to a material fact, as to the fact the defendants knew of plaintiffs' political affiliation that would preclude, in itself, the issuance of summary judgment. The Court recognizes plaintiffs' political discrimination claim may be dismissed should the fact finder find that plaintiffs failed to establish defendants knew that she was a member of the NPP. *González–De–Blasini v. Family Dept.* 377 F.3d 81 (1st Cir., 2004)(Different to the instant case, said case involved and appeal after a Jury Trial

341

plaintiffs are: Carlos Cruz Báez, Jesselle Justiano Rosario, Elliot Colón Johnson, Marla Colón Johnson, Julia Madera Tirado, Juan Jusino Amely, Nélida Báez Pérez, Sylvia Flores Morales, Santos Olivera Rivera, Nery Casiano Rosado, Felipe Vélez Valle, and José Luis Berrocales.

■ The Court, however, finds that plaintiff **Santos Ayala Melero** failed to establish his prima facie case of political discrimination since he failed to establish that he suffered an adverse employment action against him. Santos Ayala Melero, by his own account admitted that, although he tried, he never informed the defendants as to his interest of being re-hired. The expiration of the contract, in itself, is not the adverse employment action that could be attributed to the defendants. It is defendants' failure to re-hire these plaintiffs what constitutes the adverse employment action that could be attributed to discriminatory reasons. Since said plaintiff failed to even inform defendants as to his desire to be re-hired, this plaintiff may not assert he suffered an adverse employment action. Neither can he assert defendants failure to re-hire him responded to political discrimi-

nation. Accordingly, he failed to establish a prima facie case of discrimination and defendants' request as to summary disposition as to this plaintiff must be **GRANTED**. Accordingly, Santos Ayala Melero's claims against defendants are hereby **DISMISSED**.[10]

As to the other twelve (12) plaintiffs who have establish a prima facie case, the burden shifts to the defendants to proffer evidence of a valid, nondiscriminatory reason for the adverse employment actions against plaintiffs. It is, hence, defendants burden to show to the Court, by preponderance of the evidence, legitimate, credible and nondiscriminatory reasons the decision would have been made regardless of the employee's political affiliation.

#### c. *Lack of Funding*

Defendants sustain that of the thirteen (13) Law 52 plaintiffs, nine (9) last occupied positions that, after their contracts expired, were no longer eligible for funding. Defendants claim (1) **Juan Jusino Amely's** position as Security Guard, (2) **Nélida Báez Pérez's** position as Office

had been conducted). However, at this stage of the proceedings, the Court is precluded from dismissing these plaintiffs based on the inferences stated above.

10. Defendants further sustain plaintiff **Santos Ayala Melero** has failed to make child support payments. Defendants allege said conduct constitutes dishonorable conduct proscribing their employment pursuant to 21 Laws Ann. § 4557(a)(3). Accordingly, he is not eligible for employment at the Municipality. Further, defendants aver he should be disqualified because he provided false information in his application. Defendants sustain that said plaintiff submitted false information regarding his social security number in violation of 21 P.R. Law Ann. § 4557(a)(7). The Magistrate Judge concluded that if, in fact, it was established he did submit false information, said plaintiff would be disqualified for employment in the Municipality. Notwithstand-

ing, he found there was ambiguity as to who and when the social security number was corrected. The Magistrate Judge concluded that, in order to determine, if said plaintiff provided false information, the Court would have to enter into a credibility determination which is not appropriate at this stage of the proceedings. Accordingly, the Magistrate recommended, as to plaintiff Santos Ayala Melero, the request for summary disposition be denied. Notwithstanding, since the Court has determined plaintiff Santos Ayala Melero failed to establish a prima facie case of discrimination, plaintiff has failed to establish the first part of the tripartite burden shifting test in cases of political discrimination. Accordingly, he failed to reach the second prong of the test, were defendants are to establish their Mt Healthy defense. Thus, the Court refrains from issuing an opinion as to the validity of defendants' Mt Healthy defense.

Clerk for the Department of Family, (3) **Sylvia Flores Morales's** position as Teacher's Assistant for the Department of Education, (4) **Santos Olivera Rivera's** position as Mayor's Aid, (5) **Jesselle Justiniano Rosario's** position as Office Clerk of the Department of Education, (6) **Julia Madera Tirado's** position as Office Clerk for the Public Library, (7) **Nery Casiano Rosado's** position as Clerk for the Public Library, (8) **Marla Colón Johnson's** position as Clerk of the Department of Justice and (9) **Carlos Cruz Baez's** position as Office Worker of the Department of Family, occupied positions which were not granted priority under the subsequent EODF grant.

The Magistrate Judge concluded, however, that although it was clear there was significantly less funding provided by the subsequent Law 52 (EODF) grant than the funds provided by the previous grant, there were still positions available these employees could have obtained, even when their particular previous positions were eliminated. The Magistrate Judge found defendants failed to establish the lack of funding was a legitimate non discriminatory reason that would justify the adverse employment action against said plaintiffs nor that the defendants would have acted in the same manner regardless of plaintiffs' political affiliation. Accordingly, the Magistrate Judge recommended the denial of the summary judgment as to these plaintiffs.

■ Law 52 was enacted with the purpose to create jobs in order to reduce unemployment. Statement of Motives, Law 52, August 9, 1991, P.R. Laws at 213. This Act created an Employment Opportunities Development Fund to be utilized solely "for the creation of employment opportunities program in the public and private sector ... *to maintain existing jobs, extend their duration* and modify their compensation as a remedial transitional measure in situations that could bring about the possible loss of jobs." 29 P.R. Laws Ann. § 711c (c). *Emphasis Added.* In the instant case, it would seem just cause to deny continued employment due to lack of funding. And lack of funding could provide a motivating factor in terminating plaintiffs' employment. However, once the new funding was obtained, the question regarding the motivation behind the failure to recall or rehire said employees remains. Furthermore, the Court finds that to allow said action would be against the spirit of the Act that specifically provides said fund may also be used "to maintain existing jobs, extend their duration." Id. *Emphasis Added.* Though the law does not require these measures to be taken, once the subsequent fund was approved, the Municipality had the means to extend employment. Accordingly, the Court agrees with the Magistrate Judge's conclusion as to defendants' failure to proffer a legitimate non discriminatory reason (lack of funding) for the adverse employment action against the Law 52 plaintiffs. Therefore, this Court must still examine whether defendants' action responded to unconstitutional reasons.

It is an uncontested fact the subsequent grant provided funding for sixty-five (65) positions rather than the eighty (80) positions provided by the previous grant. Further, it is also uncontested certain positions, occupied by some of the thirteen (13) plaintiffs, such as aide to the Mayor, office clerk and watchman were eliminated. However, it is evidenced by the different positions some of the plaintiffs have occupied during their tenure at the Municipality that, as it was concluded by the Magistrate Judge, some of the positions covered by the second grant (e.g."worker") were flexible enough to provide employment to previous Law 52 employees. Considering

the object of Law 52 is, *inter alia,* "to maintain existing jobs [and] extend their duration" 29 P.R. Laws Ann. § 711c (c), the Court agrees with the Magistrate Judge's conclusion defendants' lack of funding justification is not, in the instant case, a legitimate non discriminatory reason that justifies defendants' adverse employment action as to these plaintiffs. Hence, even though the records show reduced funding, the question as to whether defendants' actions responded to discriminatory reasons remains unanswered specially when PDP members were retained during said period of time.

It is evident that the judging of this matter involves an issue of motive and intent which are normally precluded at brevis disposition stage. *Domínguez–Cruz v. Suttle Caribe, Inc.* 202 F.3d 424. 433 (1st Cir.2000). It is widely known that unsettled issues of motive and intent as to the conduct of any party preclude the Court from granting summary judgment. *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d at 677. Further, said questions are "better suited for the jury." Id. *See Perry v. Sindermann,* 408 U.S. 593, 597–598, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Accordingly, the Court hereby **ADOPTS** the Magistrate Judge's recommendation and **DENIES** summary disposition as to Juan Jusino Amely, Nélida Báez Pérez, Sylvia Flores Morales, Santos Olivera Rivera, Jesselle Justiniano Rosario, and Marla Colón Johnson's [11]

#### d. *Written Reprimands*

Defendants sustain that two (2) of the Law 52 employees, **Elliot Colón Johnson** and **Julia Madera Tirado** received written reprimands from department supervisors for bad conduct. Defendants contend Julia Madera Tirado was reprimanded for physically assaulting a supervisor in her department and Elliot Colón Johnson was reprimanded for disorderly conduct resulting in the destruction of Municipal property. Further, defendants aver that plaintiff Elliot Colón Johnson admitted that by November 2000, he considered leaving the Municipality due to problems with employees. Plaintiffs claim that, even if defendants showed a valid reason for the personnel action in question, plaintiffs may still prevail if they demonstrate the adverse employment action responded to unconstitutional reasons.

The Magistrate Judge concluded defendants' proffered legitimate reasons were "less than persuasive and unconvincing." *Magistrate Judge's Report and Recommendation* (Docket No. 81) p. 13. Further, the Magistrate Judge found defendants failed to direct the Court as to any policy which classifies as ineligible for public positions an individual who receives a reprimand. Accordingly, the Magistrate Judge determined that receiving a reprimand was not a legitimate reason for defendants' failure to renew an individual's Law 52 contract and, thus, recommended defendants' request for summary judgment as to these two (2) plaintiffs be ultimately denied.

Defendants claim the Magistrate Judge failed to understand defendants' argument as to the written reprimands received by some of the Law 52 plaintiffs. Defendants aver they never argued said reprimands would automatically make the employee ineligible but that said reprimands are proof defendants had other reasons, aside from plaintiffs' political affiliations, to disregard these plaintiffs as candidates when

---

**11.** Plaintiffs Julia Madera Tirado, Carlos Cruz Baez and Nery Casiano Rosado are not included because defendants provided other independent reasons for their adverse employment action against them that will be discussed *infra.*

they were evaluating applicants for the positions.

■ It is uncontested that on September 17, 1999, plaintiff Julia Madera Tirado, received a written reprimand for physically assaulting a supervisor in her department. It is also uncontested Elliot Colón Johnson, during his tenure at the Municipality, received a written reprimand from his supervisor for disorderly conduct that results in damage to Municipal property. However, it is settled law that in a political discrimination action pursuant to § 1983 the plaintiff may still prevail regardless of the fact defendants may have proffered a legitimate non discriminatory reason for the adverse employment action in question if it is found they would not have received the same treatment 'but for' their political affiliation. *Acosta–Sepúlveda v. Hernández–Purcell,* 889 F.2d at 13. Notwithstanding, plaintiffs have failed to proffer evidence to establish they would not have received the same treatment 'but for' their political affiliation, failing to comply with their burden of proof as to the third part of the Mt Healthy tripartite burden shifting test. Accordingly, the Court **REJECTS** the Magistrate Judge's conclusion and **GRANTS** defendants' request of summary disposition as to Elliot Colón Johnson[12] and Julia Madera Tirado. Hence,

Elliot Colón Johnson's and Julia Madera Tirado's claims are hereby **DISMISSED.**

### e. Ineligibility to be a Municipal employee

Defendants contend that plaintiffs **Carlos Cruz Baez, Nery Casiano Rosado and José Luis Berrocales Baez** were ineligible to be Municipal employees. Defendants aver these plaintiffs were hired illegally according to 21 P.R. Law Ann. § 4557. Defendants affirm each of these three (3) individuals fail to comply with conditions required to be a municipal employee.[13]

First, defendants maintain that plaintiff **Carlos Cruz Baez** was once separated from a state government position as a Juvenile Custody Officer for committing aggravated assault, for which he was convicted. Accordingly, defendants sustain Cruz Baez is not eligible for employment at the Municipality due to his criminal record. 21 P.R. Laws Ann § 4557(a)(5). The Magistrate Judge agreed and recommended the granting of the summary judgment as to **Carlos Cruz Baez** since he was convicted of aggravated assault and plaintiffs failed to demonstrate the adverse employment action was more likely than not based on said plaintiff's political beliefs.

---

12. The Court further notes that Elliot Colón Johnson even admitted at his deposition that he understood that he had not been discriminated.

13. In its pertinent part, said statute states:

(a) General conditions for employment— The following general conditions are hereby established for entrance to municipal public service:

(1) Be physically and mentally able to perform the duties of the position.

. . .

(3) Not have incurred in dishonorable conduct.

(4) Not have been separated from the public service for causes that disqualify him/her

(5) Not have been convicted of a felony or any other crime implies moral turpitude or infraction of official duties

(6) Not be addicted to the habitual use of controlled substances or alcoholic beverages

(7) Not have submitted, or attempted to submit false or deceitful information on examination or employment application.

The last five (5) causes shall not apply when the candidate has been rehabilitated for public service by the Director of Personnel Administration Central Office.

Plaintiffs objected said determination claiming that, in determining plaintiffs failed to rebut defendants defense by .showing the same decision would have not been taken had not been for plaintiff's political affiliation, the Magistrate acted as a trier of facts weighing contradictory evidence to that effect. Plaintiffs aver that, in order to determine plaintiff failed to proffer evidence to rebut defendants' defense and demonstrate that in spite of the valid reason he would not have been re-hired had not been for his political affiliation, the Magistrate Judge had to assess the credibility of plaintiff, which is the duty of the trier of fact and not appropriate at this stage of the proceedings. The Court disagrees.

Plaintiffs are correct in their assertion that weighing of the evidence is inappropriate when considering a motion for summary disposition. *Greenburg v. Puerto Rico Mar. Shipping Auth.*, 835 F.2d at 936. However, defendants have provided a valid justification for their adverse employment action against plaintiff Carlos Cruz Baez. Defendants **were precluded, by law,** from re-hiring said plaintiff 21 P.R. Laws Ann § 4557(a)(5). Accordingly, they have provided the Court with evidence to support their contention that, regardless of plaintiff's Cruz Baez political affiliation, they would have made the same determination. Plaintiff's conviction is more than sufficient grounds for defendants' action. Accordingly, the Court finds defendants have complied with their burden establishing a legitimate nondiscriminatory reason to justify their adverse action, and further showing the same decision would have been made irrespective of plaintiff's political affiliation. *Mt. Healthy City Sch. Dist. Bd. v. Doyle*, 429 U.S. at 287, 97 S.Ct. 568. *Kauffman v. Puerto Rico Telephone*, 841 F.2d 1169 (1st Cir. 1988). Consequently, the Court hereby **ADOPTS** the Magistrate Judge's recom-

mendation granting the summary judgement as to plaintiff Cruz. Therefore, Cruz Baez's claims are hereby **DISMISSED.**

Second, defendants sustain plaintiff **José Luis Berrocales Baez** has been identified by the Administration of Child Support as "dead beat dad" for failure to make child support payments. Defendants claim said conduct constitutes dishonorable conduct proscribing their employment pursuant to 21 Laws Ann. § 4557(a)(3).

The Magistrate Judge concluded failure to pay child support is not contemplated under "dishonorable conduct" described in the Act. Accordingly, defendant's justification did not constitute a legitimate non discriminatory reason for their adverse employment action against said plaintiff and their request for summary judgment had to be denied. Since defendants failed to raise an objection as to this conclusion, absent plain error, *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir.1996)(en banc)(extending the deferential "plain error" standard of review to the unobjected to legal conclusions of the magistrate judge); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir.1982)(en banc)(appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"), this Court hereby **ADOPTS** the Magistrate Judge's recommendation and **DENIES** defendants' request for summary disposition as to plaintiff José Luis Berrocales Baez.

Finally, as to plaintiff **Nery Casiano Rosado**, defendants aver that the then director of Human Resources, María Cerra, received several complaints as to his alcohol breath during work hours. Defendants contend that plaintiff's constant state of inebriation is a condition that bars him from entering the public service. 29 Laws Ann. § 4557(a)(6). Accordingly, he

was ineligible to work at the Municipality. The Magistrate Judge concluded defendants failed to proffer enough evidence to place the Court in a position to make a judgment as to whether this plaintiff could be disqualified pursuant to Section 4557(a)(6) of the Act. Accordingly, he recommended the denial of defendants' request for brevis disposition as to this plaintiff.

Defendants' objected to the Magistrate Judge's recommendation claiming the Magistrate Judge failed to consider evidence regarding Nery Casiano's attendance record which independently demonstrated plaintiff failed to comply with his work schedule during 2000. Defendants further sustain this evidence, together with the complaints regarding his state of inebriation and his failure to excuse his absences, is clear evidence he failed to comply with his work because he was an alcoholic.

The Court agrees with the Magistrate Judge's conclusion defendants failed to proffer enough evidence (the court may not weight evidence at summary judgment procedures) to permit this Court to conclude that, in fact, Nery Casiano is an alcoholic precluded from being employed at the Municipality pursuant to 21 L.P.R.A. § 4557(a)(6), which prohibits employment to those "addicted to the habitual use of controlled substances or alcoholic beverages". As to defendants' objection the Magistrate Judge failed to consider evidence as to his attendance record and failure to excuse his absences, the Court finds the evidence purported by defendants only provides as to the dates he worked for the Municipality and the salary

earned. There is no evidence that the absences were not legitimate and/or authorized by law or regulation. The Court finds said evidence does not support defendants' allegation as to Nery Casiano's absences or his failure to comply with his work scheduled during 2000. Accordingly, this Court hereby **ADOPTS** Magistrate Judge's recommendation. Hence, defendants' motion for summary judgment as to Neri Casiano is **DENIED.**[14]

### 3. Qualified Immunity as to Law 52 Employees

*The Magistrate Judge concluded the qualified immunity doctrine did not shield from* liability co-defendants' Segarra and Negrón Irizarry. The Magistrate Judge found all plaintiffs alleged facts that, if proven true, would amount to a violation of their rights. Specifically, a violation of plaintiffs' First Amendment rights which, the Magistrate Judge concluded, is a violation of an established right. Further, the Magistrate Judge ruled that, since as to these employees there were "factual disputes regarding possible political discrimination and the motivations on the part of the defendants, the Court [was] in no position to grant defendants' motion for qualified immunity at this time." *Magistrate Judge's Report and Recommendation* (Docket No. 81, p. 19).

Defendants duly objected to the Magistrate Judge's conclusion claiming the Mayor did not have a clear established directive that he had to reappoint all of the former Law 52 transitory employees of the Municipality. Defendants further aver a

---

**14.** As to Law 52 plaintiff **Felipe Vélez Valle,** defendants failed to allege any other independent justification for defendants' adverse employment action against him. Accordingly, the Court assumes defendants' request for brevis disposition against said plaintiff is cir- cumscribed to the general allegation of the other thirteen (13) Law 52 plaintiffs. Therefore, as previously discussed, defendants request for summary disposition as to plaintiff Vélez Valle is **DENIED.**

reasonable officer could have not known, at that time, that he could not re-appoint the plaintiffs based on their political beliefs.

■ Plaintiffs agree with defendants that a reasonable person could have believe that he was in no obligation to re-hire the previous Law 52 employees because they had no right to reappointment. However, plaintiffs sustain that what defendants could not have reasonably believed is that they could fail to hire said employees due to their political affiliation. Plaintiffs aver that it is clearly established that "public employment actions based upon the political affiliation of an employee impinges, as a general rule, upon that persons constitutional rights." *Plaintiffs Memorandum of Law in Support of their Opposition to Defendants Motion for Summary Judgment* (Docket No. 74, at 21) *Citations omitted.* Said protection comprises Law 52 plaintiffs in the instant case. The Court agrees and explains.[15]

■ Qualified immunity shields public officials performing discretionary functions from civil damages, so long as their conduct does not violate clearly established statutory or constitutional rights of which an objectively prudent person would be aware. *Harlow v. Fitzgerald* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Ringuette v. City of Fall River,* 146 F.3d 1, 5 (1st Cir., 1998). Essentially, "[q]ualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997) *(citations omitted ); Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

A qualified immunity defense requires a two-part analysis: "The first inquiry is whether the constitutional right asserted by plaintiffs was clearly established at the time of the alleged violation. The second inquiry, once the Court determines that the right was clearly established, is 'whether a reasonable officer in the same situation would 'have understood that the challenged conduct violated that established right.' '." *Aponte Matos v. Toledo Davila* 135 F.3d 182, 186 *(citations omitted).* Under the first prong, an official can only be liable for damages if the unlawfulness of his conduct is apparent in light of preexisting law. *Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. 3034. "The second prong demands objective reasonableness from the employer: the actions must be such that 'a reasonable [employer] could have believed [his actions] to be lawful, in light of clearly established law and the information the [acting employer] possessed.' " *Aponte Matos v. Toledo Davila,* 135 F.3d at 186 quoting *Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. 3034. Only when these two questions are affirmatively answered "should the court address 'the particular conduct in question" *Kelley v. LaForce* 288 F.3d 1, 6 (1st Cir., 2002) quoting *Abréu–Guzmán v. Ford,* 241 F.3d 69, 73 (1st Cir., 2001).Only then, the Court should determine "whether an objectively reasonable official would have believe that his conduct was lawful 'in light of clearly established law and the information the official possessed at the time of his

---

**15.** The allegation of defendants runs counter to clearly established precedent. Since *Cheveras Pacheco v. Rivera González,* 809 F.3d 125, 127–29 (1st Cir.1987) and repeated at *Nieves–Villanueva v. Soto–Rivera,* 133 F.3d 92,98 (1st Cir.1997) it has been decided that lack of expectation of renewal in transitory contracts such as Law 52 contracts "do not defeat First Amendment claim." *Gómez v. Rivera Rodríguez,* 344 F.3d at 111, n. 5.

allegedly unlawful conduct.'" *Kelley v. La-Force* 288 F.3d at 6 quoting *McBride v, Taylor,* 924 F.2d 386, 389 (1st Cir., 1991).

There is no question about the general existence of a First Amendment right. However, in assessing the applicability of the qualified immunity the real inquiry is whether these Law 52 plaintiffs had a clearly established protection against political discrimination that precluded defendants from failing to recall and to rehire them solely on basis of their political affiliation.

Law 52 employees are considered transitory employees who have no property interest as to their position. However, this fact "does not defeat a First Amendment claim." *Gómez v. Rivera Rodríguez,* 344 F.3d at 111 fn. 5 quoting *Nieves–Villanueva v. Soto–Rivera,* 133 F.3d at 98; *Cheveras Pacheco v. Rivera González,* 809 F.2d at 127–28 (holding that transitory employees are entitled to protection under the Elrod/Branti line of cases.). The *Elrod–Branti* doctrine has been expanded to include transfers, recalls and hiring decisions. *Rutan v, Republican Party of Illinois* 497 U.S. 62, 75, 110 S.Ct. 2729, 2737, 111 L.Ed.2d 52 (1990).

Either if the Law 52 plaintiffs' situation is considered a failure to recall or failure to re-hire situation, it was clearly established, at the time of defendants' action, that political affiliation could not be the motivation for defendants' adverse employment action against plaintiffs (lack of rehiring). *Cheveras Pacheco v. Rivera González,* 809 F.2d at 127–129; *Nieves–Villanueva v. Soto–Rivera* 133 F.3d at 98 reiterated at *Gómez v. Rivera Rodríguez,* 344 F.3d at 111 n. 5 (the law is clear since 1987 making the allegation of qualified immunity highly questionable.) Accordingly, plaintiffs have successfully established that they had a first amendment right that protected them from defendants' failure to recall them or re-hire them on account to their political affiliation. Further, an objectively reasonable official should have known, based in the clearly established law at said time, the conduct of defendant was unlawful. Further, the Court finds there is a genuine issue as to defendants' motivation for their adverse action against the Law 52 plaintiffs, precluding this Court from the issuance of summary judgment. Therefore, the Magistrate Judge's recommendation is hereby **ADOPTED**. Consequently, defendants' request for summary disposition based on the application of the qualified immunity doctrine is hereby **DENIED**.

## C.  Temporary Employees

### (Positions funded by federal funds not related to the EODF grant)

In the instant case, two plaintiffs **Carmen Bonilla** and **Pedro Irizarry Bonilla** were temporary employees whose contracts were funded by federal monies not related to the Law 52 (EODF) grant. Defendants sustain these two plaintiffs failed to establish a prima facie case of discrimination. Further, defendants aver, as a legitimate reason for the adverse employment action against these plaintiffs, the Office of Federal Programs, from January to June 2001, did not have sufficient funds to continue operations or to maintain the employees of the Office.

Specifically, as to plaintiff Pedro Irizarry Bonilla, defendants claim his contract, for services beginning on January 1, 2001 until June 2001, was executed during the electoral ban. Accordingly, the contract was null ab initio. Further, defendants aver plaintiff Irizarry Bonilla was irresponsible in his duties and mishandled the Federal Programs' material donations.

As to Carmen Bonilla, defendants contend she could not have been considered for the appointment under the EODF

grant, that after February 1, 2001 funded the housekeepers position since she was not unemployed at the moment. Accordingly, defendants sustain she was not eligible to benefit from the EODF fund.

### 1. Factual Background

a. Plaintiff **Carmen Bonilla** is an member of the NPP who actively participated in several political activities. Employees at the Municipality were aware of her political affiliation. Carmen Bonilla's contract was funded pursuant to a federal program that expired on March 31, 2001. Until then, her contract with the Municipality of San Germán had been regularly renewed. However, although she notified her availability to work, Mayor Negrón appointed PDP followers to Law 52 positions. Mayor Negrón had knowledge as to Bonilla's political affiliation.

b. Plaintiff **Pedro Irizarry Bonilla** had been an active member of the NPP since 1980. He was an electoral college functionary for the 2000 election, was part of the advance political team of former Mayor Llantín and had participated in several political activities, including a weekly radio program promoting the former NPP Mayor's candidacy for re-election. Employees at the Municipality knew his political affiliation. In January 2001, plaintiff's employment contract was terminated notwithstanding that it was to expire on June 30, 2001. Irizarry Bonilla had a service contract with the Municipality as Housing Inspector funded with federal monies.

### 2. Analysis

Carmen Bonilla's and Pedro Irizarry's employment were funded by a federal grant. Carmen Bonilla was not re-hired after her contract expired on March of 2001 and Pedro Irizarry's contract was terminated before its expiration. Both plaintiffs sustain defendants' action responded to discriminatory reasons. The Magistrate Judge found both Carmen Bonilla and Pedro Irizarry provided enough evidence to support their prima facie discrimination claim. The Court agrees. Notwithstanding, the Court must address defendants' Mt Healthy defenses.

Plaintiff **Carmen Bonilla** was employed as a housekeeper and her position was funded by federal monies different from the EODF (Law 52) grant. Defendants sustain the municipal policy on Housekeepers, which is **now** funded by the EODF grant, is that participants requesting the service be recommended by a person they know or with whom they are comfortable, in order to avoid conflicts. Accordingly, defendants aver she could not had been re-employed as a housekeeper without the recommendation of a participant of the program. Further, defendants maintain that by February 1, 2001, Carmen Bonilla was not an unemployed individual. Accordingly, she was not eligible for a Law 52 position pursuant to the EODF grant, which, by then, funded the housekeepers positions, since she did not comply with one of the requirements, unemployment, to be eligible for the position.

The Magistrate Judge determined Carmen Bonilla worked as a housekeeper until March 31, 2001. While her contract was still active, the policy regarding her funding changed. The funding for her position now comes from the Law 52 grant. Pursuant to 29 L.P.R.A § 711(c), the job may only be offered to those registered in the unemployment office. Since Bonilla was not unemployed in February she was not eligible for a Law 52 position. Accordingly, the Magistrate Judge recommended the summary judgment as to Carmen Bonilla.

Plaintiffs failed to object to the Magistrate Judge's recommendation. As no objections to this part of the Report and Recommendation has been filed to this

case, this Court need only satisfy itself that there is **no plain error** on the face of the record in order to accept an **unopposed Report and Recommendation.** *See Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1419 (5th Cir.1996)(en banc)(extending the deferential "plain error" standard of review to the unobjected to legal conclusions of the magistrate judge); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir.1982)(en banc)(appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"). As this Court finds no 'plain error' with the Magistrate Judge's recommendation, this Court hereby **ADOPTS** this part of the Report and Recommendation and **GRANTS** the motion for summary judgement as to Carmen Bonilla.

As to plaintiff **Pedro Irizarry Bonilla,** defendants sustain that, from January through June 2001, the Federal Programs did not have sufficient funds to continue operations. That statement, however, is contested by Irizarry Bonilla's sworn statement that he was substituted by a PDP follower. Further, defendants claim the electoral prohibition, on said electoral year, comprised the period from September 8, 2000 until January 6, 2001. Notwithstanding, the prohibition, defendant sustains that said contract was executed on December of 2000.[16] Accordingly, Irizarry Bonilla's contract was issued during the electoral prohibition which made the contract null.

**Pedro Irizarry** worked as a Housing Inspector whose position was funded by federal monies and his contract was not to expire until June 2001. Defendants sustain they terminated his contract prematurely in January 2001 due to lack of funds. Defendants further affirm Irizarry's contract was issued during the electoral ban and, therefore, it was illegal. Defendant contend that, only after funding was again available, did the Municipality hire Mr Steffany who occupied Irizarry Bonilla's previous position.

The Magistrate Judge concluded there was an issue of material fact as to the motivation behind Pedro Irizarry's adverse employment action. The Magistrate Judge determined that, although defendants sustain the reason for the termination of the contract was lack of funding, he was replaced with another individual. The Magistrate Judge further found plaintiff's replacement's political affiliation were in dispute and that the replacement's affiliation was essential in determining whether plaintiff's political affiliation was substantial in defendants action. Accordingly, the Magistrate Judge held there was a genuine issue as to a material fact precluding the issuance of summary judgment as to this plaintiff.

Defendants, objected to said recommendation claiming Irizarry Bonilla's termination responded to lack of funds. Further, defendants aver that since his appointment was null *ab initio,* because it was made during the electoral ban, Irizarry Bonilla cannot allege his contract was rescinded due to his political affiliations. Furthermore, defendants sustain Irizarry Bonilla as a supervisor, was irre-

---

**16.** Although the Court takes judicial knowledge the electoral ban in Puerto Rico includes the two months prior to the elections and the two months after the elections, 3 P.R. Laws Ann § 1337, defendants failed to provide the Court with evidence to support the fact as to when the contract was issued and that said contract was one of those covered by said prohibition ("the authorities shall abstain from making any movement of personnel involving areas essential to the merit principle, such as appointments, promotions, demotions transfers and changes in category of the employees.")

sponsible and mishandled the Federal Programs materials donations.

First, the Court fails to find evidence on the record to sustain that plaintiff's contract was issued during the electoral ban. Although the Court does not dispute that, during an electoral ban, certain kinds of appointments may be invalid, defendants failed to submit the required evidence in order for the Court to make such a determination at this stage of the proceedings. Second, as to defendants' allegation that he was irresponsible and mishandled federal programs, defendants failed to provide evidence as to facts to support their contention. A conclusory opinion without evidence as to specific facts is not enough to support their allegation. See generally, *Vélez v. Puerto Rico Electric Power Authority*, 170 F.Supp.2d 158 (D.P.R.2001).

Finally, defendants raise, as their primary reason for rescinding Irizarry Bonilla's contract, (See *Memorandum of Law in Support of Motion for Summary Judgment* (Docket No. 64 p. 19) and *Defendant's Statement of Uncontested Facts*, p. 16, No. 76) the alleged lack of funding for the program during the months Irizarry Bonilla's contract was rescinded. It is uncontested that, from January through June 2001, the Federal Programs did not have sufficient funds to continue operations. However, at a given moment, Rafael Steffany was hired to perform Irizarry Bonilla's functions. Defendants sustain Rafael Steffanny was employed after funding was again available, but they failed to provide the Court with evidence as to the moment he was hired and as to the moment funding was again available. Although they point to evidence in the record in support of their statement (Exhibit 4(b) pp. 40–41 and 3(a) pp. 193–194, Exhibits 4(b) and 3(a)) do not contain said pages. The Court does not have to incur in the "the daunting burden of seeking a needle in a haystack ...." See *Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir.2001).

In sum, while defendants sustain lack of funding was the reason for rescinding Irizarry Bonilla's contracts, the statement is contested by the fact that another individual was hired to perform the same duties. The Court emphasizes that summary judgment "admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d at 684 *citing Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d at 936. Further, there are reasons of motive and intent that preclude the issuance of summary judgment. *Mulero–Rodríguez v. Ponte, Inc.*, 98 F.3d at 677.

Accordingly, the Court finds there are genuine issue of material fact as to defendants' Mt Healthy defense that precludes this Court from disposing the matter via summary disposition. Hence, the Court hereby **ADOPTS**, although for different reasons, the Magistrate Judge's recommendation. Accordingly, defendants' motion for summary judgement as to Pedro Irizarry Bonilla is hereby **DENIED**

### D. Career Employees

Finally, defendants allege summary judgment should be issued as to the five (5) plaintiffs who were career employees when they suffered the alleged adverse employment action. Plaintiffs Felix Casiano, María del Carmen Vargas, Marisol Sanabria, Marisa Ramirez and Lisabetta Valverdi were career employees who alleged workplace harassment and violation of their due process rights. Further, some of these plaintiffs were terminated from their positions. Defendants sustain these plaintiffs failed to establish a *prima facie* case of political discrimination. They aver

that the alleged adverse employment action suffered by said plaintiffs was not severe enough resulting in a constitutional deprivation. The Magistrate Judge recommended this Court to grant summary judgment as to Felix Casiano and María del Carmen Vargas and to deny defendants' request as to Marisol Sanabria, Marisa Ramirez and Lisabetta Valverdi. Both parties duly objected to the Magistrate Judge's recommendation. Accordingly, this Court reviews, *de novo*, defendants' request for summary disposition.

## 1. Factual Background

a. Plaintiff **Felix Casiano Rodríguez** is a career employee who has been an active member of the NPP since he was eighteen (18) years old. He assisted the 2000 elections campaign director in several tasks related to the making of commercials, radio and television programs. Previously he ran for Municipal Assemblyman for the Municipality of San German. He was also a member of former NPP Mayor's advance political team and worked in the organization of political activities. Employees at the Municipality of San Germán knew of his strong political affiliation.

Plaintiff Casiano was hired as a career employee in the year 2000. Casiano Rodríguez worked at the Press and Communications Office. Once the new Mayor took office, plaintiff was relocated to the Tourism Office where he was deprived of necessary facilities such as a telephone, a secretary, a desk and an office. He was relegated to the occasional shooting of videos and was finally terminated on November 30, 2001.

b. Plaintiff **Lisbette Valverdi Surís** is a career employee who is an active member of the NPP. She has participated in several NPP political activities. She also worked as an electoral college functionary and has been a member of several NPP advance political teams and worked in a trust position during the administration of former Mayor Llantín's administration. Employees at the Municipality of San Germán knew of her political affiliation. On January 9, 2001, plaintiff's salary was withheld until she was assigned to a work station. Plaintiff went to the Human Resources Office, where she had been reinstated and was told they did not have anything for her to do. On January 29, 2001, the Human Resources Director appointed a new employee, Ana Medina, to perform some of plaintiff's duties. On January 31, 2001, plaintiff was transferred to the Public Library where she reported to the Public Library Director, as the secretary he had requested, but the Director told her he had not requested a secretary. The Director informed her he had requested someone to do librarian work. Since then, plaintiff has been performing duties as a librarian aide, and her salary was reduced.

c. Plaintiff **Marisol Sanabria Irizarry** is a career employee who is affiliated to the NPP. During the 2000 political campaign, she was a member of the advance political team of former Mayor Llantín and had worked as an electoral college functionary at the voting polling places since attaining legal age. People at the Municipality knew of her political affiliation. Sanabria Irizarry started working at the Municipality in the trust position as Municipal Secretary. On September 14, 2000, she was appointed as an Administrative Assistance with a salary of $1,400.00. On January 20, 2001, plaintiff was transferred from City Hall to the Recycling Office. Plaintiff sustains Amarylis Ortiz and Carmen Rodríguez, who were already employed by the Municipality, are performing her former duties. On April 19, 2001, plaintiff was informed her salary did not correspond to the position of Administrative Assistant. On said grounds, her sala-

ry was diminished to $1,035.00 a few days after she was transferred. Further, Mayor Negrón went to her office and searched her desk without informing her the reason for the search.

At a given moment, the director of Recycling, Defendant Nazario, requested from Defendant Mayor Negrón an assistant who possessed a scientific background. Plaintiff Sanabria possesses a BA in Biology. She is the only employee performing secretarial and administrative work on the office of recycling, such as coordinating suppliers and recycling collectors, making requisitions, writing reports and filing.

d. Plaintiff **Marissa Ramírez Negrón** is a career employee who is also an activist for the NPP. She has participated in several political activities, was the Vice–President of the former NPP Mayor's political advance team and worked as a voter mobilizer. Employees at the Municipality knew of her political affiliation. Ramírez Negrón was appointed as an Office Clerk on July 1, 2000. She worked at the Interagency Coordination Office which was locally situated at City Hall. During a conversation held with Mr Rosado, the new head of the interagency Coordination Office she was advised she was to be removed from the office but because they knew each other, she could choose, between three divisions, as to where she wished to be transferred. On January 25, plaintiff notified her supervisor she wished to be transferred to the Office of Recycling where Director Jose Nazario had requested an assistant with administrative tasks. She was subsequently transferred to the Public Library where she answers the phone and assists students in their search for information. On May 1, 2001, plaintiff Ramírez' monthly salary was reduced. According to plaintiffs Nery Casiano and Julia Madera, Ms. Ramírez is performing the duties they performed at the Public Library on 2000.

e. Plaintiff **María del Carmen Vargas Calderón** is an NPP affiliate who in 1992 ran for the Municipal Assembly as a candidate for the NPP. She started working at the Municipality of San German on August 16, 2000 as an Internal Auditor. She was confirmed by the Municipal Assembly through Resolution10, Series 2000–2001. Plaintiff was removed from her position and was substituted by Juan Rosado, an affiliate to the PDP.

### 2. Analysis

The Court first recognizes that all of the above career employees have established a prima facie case of discrimination. These plaintiffs have proved that they are active members of the NPP and have suffered an adverse employment action that coupled with the highly charged political atmosphere, creates an inference can be made as to defendants' discriminatory animus. Accordingly, the Court must address defendants' Mt Healthy defenses as to each of these plaintiffs.

In the case of plaintiff **Felix Casiano Rodríguez**, the Magistrate Judge recommended the issuance of summary judgment and hence the dismissal of his claims. The Magistrate Judge established that Casiano Rodríguez was notified his employment had been granted in violation of the Autonomous Municipalities Act; he was afforded a pre-termination hearing, where he was represented by an attorney, and in the hearing it was determined he was appointed to his position in violation of the Autonomous Municipalities Act. Accordingly, the Magistrate Judge concluded defendants succeeded in providing a legitimate justification for his dismissal. *Kauffman v. P.R. Telephone Co.*, 841 F.2d at 1172 As to plaintiff's allegation of discrimination occurring even before his termination, the Magistrate Judge determined plaintiff loss

of the 'perks' of his position failed to meet the 'unreasonable standard' required to establish a constitutional violation. Accordingly, the Magistrate Judge recommended defendants' request as to this plaintiff be granted.

Plaintiffs objected to the Magistrate Judge's determination claiming the Magistrate Judge weighed contradictory evidence in determining plaintiffs failed to discredit the proffered non-discriminatory reason for plaintiffs' discharge. Plaintiffs aver plaintiff Casiano Rodríguez proffered duly supported statements of uncontested facts which demonstrate that he was a very active NPP member and he was a victim of harassing acts undertaken against him long before the hearing which ultimately led to his dismissal. Plaintiffs aver this fact could lead a jury to believe that notwithstanding the irregularities of his appointment, he would not have been terminated had not been for his political affiliation. Defendants, on the other hand, sustain the Magistrate Judge's assessment is not an assessment of credibility but an assessment of one of the essential elements of plaintiff's cause of action. Defendants aver that, since Puerto Rico law requires that public employees be appointed through the merit principle and imposes nullity upon acts which violates this norm, then a public employee who losses a job which was unlawfully obtained cannot prove the cause of the dismissal was his political affiliation.

**Felix Casiano Rodríguez** worked in the office of Cultural and Town activities. Towards the end of year 2000, Casiano Rodríguez was informed that his appointment violated the Autonomous Municipalities Act., 21 P.R. Laws Ann., T.21 §§ 4001 et seq. Pursuant to the property interest granted by his status as a career employee, Casiano Rodríguez was granted a pretermination hearing. Represented by

counsel, he had the opportunity to contest that his appointment did not violate the Autonomous Municipalities Act. The administrative judge, nonetheless, found him to be in violation of said Act and proceeded to terminate his employment. Defendants sustain that, since after a hearing it was determined that Casiano's appointment was illegal, they were justified to terminate his employment. The Court agrees. However, although this defeats plaintiff's due process claim, this does not affect the rights afforded to him under the First Amendment. *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d at 1172.

As the Magistrate Judge did, this Court finds that defendants complied with their burden of establishing a legitimate non-discriminatory reason for the dismissal. Notwithstanding, as noted earlier, the illegality of plaintiff's appointment does not automatically rid the plaintiff of his First Amendment rights. *Santiago–Negron v. Castro–Davila*, 865 F.2d 431, 436 (1st Cir., 1989). Therefore, the burden shifts back to plaintiff to demonstrate that the real reason behind defendants' adverse action was political discrimination. In order to defeat defendants Mt Healthy defense as to the termination, plaintiff had to establish that other employees, who likewise were hired in violation of the law but were members of the PDP, were not dismissed. *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d at 1172. Plaintiff failed to do so. Accordingly, as to his termination, the Court finds that the plaintiff failed to provide any evidence to even suggest, much less establish, his termination responded to political discrimination.

Nevertheless, the inquiry does not end here since Casiano Rodríguez further sustains he was a victim of discrimination even before he was terminated. Plaintiff claims that, before he was terminated, he was moved out of his previous office and

deprived of the basic amenities of his employment, such as a telephone, a secretary, a desk, an office and authorization to use official vehicles. He further avers he was relegated to the occasional shooting of videos. Notwithstanding, the Court finds Casiano Rodríguez failed to reached the required threshold to justify into a constitutional violation. The Court explains.

■ A cause of action for a violation of an employee's First Amendment rights, in cases where plaintiff alleges changes to his working conditions, only rises "when the government's actions are sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party." *Agosto–de–Feliciano v. Aponte–Roque*, 889 F.2d 1209, 1217 (1st Cir., 1989). The level of burden is reached "when the employer's challenged actions result in a work situation 'unreasonably inferior' to the norm of the position." *Id.* at 1218. The Court, hence, needs to evaluate "whether the changes were sufficiently severe to warrant the 'unreasonable inferior' description." *Id.*

In their opposition, plaintiffs aver the Magistrate Judge inappropriately weighed conflicting evidence in reaching to his conclusion. This Court disagrees. The Magistrate Judge did not weigh conflicting evidence to reach his conclusion that plaintiff failed to reach the 'unreasonable inferior' threshold, the Magistrate Judge simply found the facts, as alleged by the plaintiff, did not reach the 'unreasonable inferior' standard and, accordingly, plaintiff failed to establish a First Amendment cause of action.

It is uncontested Casiano Rodríguez was relocated to the Tourism Office where he was deprived of necessary facilities such as a telephone, a secretary, a desk, and an office. However, the Press and Communications Office, where plaintiff worked, was

relocated to said building. Accordingly, his relocation, in itself, may not be considered as an action motivated by a discriminatory animus. However, still before the Court is the determination of plaintiff's deprivation of the use of necessary facilities such as a telephone, a desk, a secretary and an office. However, "[a]n employee who has lost merely the 'perks' of his position ... [does] not meet the 'unreasonably inferior' standard." *Id.* at 1219. Accordingly, plaintiff failed to establish that he had suffered a constitutional violation based on his allegations as to the lost of perks.

Finally, the Court addresses whether the changes as to his functions were sufficiently severe to warrant the 'unreasonably inferior' description. In order to make this determination, "the fact finder should canvass the specific ways in which the plaintiff's job has changed." *Agosto–de–Feliciano v. Aponte–Roque*, 889 F.2d at 1218. Plaintiffs sustain and it is uncontradicted, he was relegated to the occasional shooting of videos. However, plaintiff failed to provide the Court any information as to what his functions were to be in order for the Court to assess if the change is substantial enough to meet the "unreasonably inferior" standard. Hence, plaintiff has failed to comply with his burden to establish he suffered a constitutional violation. Accordingly, the Magistrate Judge's recommendation is hereby **ADOPTED.** Defendants' request for summary judgment as to Casiano Rodríguez is hereby **GRANTED** and his claims against defendants are hereby **DISMISSED.**

The Court now addresses the Magistrate Judge's determination as to plaintiffs Lisbette Valverdi Surís, Marissa Ramírez Negrón and Marisol Sanabria Irizarry. The Magistrate Judge concluded their salary reduction following their transfer of office met the "unreasonably inferior"

standard. Further, the Magistrate Judge found there were genuine issues of material facts regarding the motivation of plaintiffs' relocations and reductions in salary, that precluded the issuance of summary disposition. In their objection, defendants sustain the evidence demonstrates these employees' salaries were in excess to the salaries corresponding to their respective positions and they were afforded with a hearing. However, as explained earlier the fact that a hearing was held as to these plaintiffs' reductions of salary does not end this Court's inquiry as to their political discrimination claims.

**Marisol Sanabria Irizarry, Marisa Ramírez Negrón, and Lisabette Valverdi Surís** all claim to have been transferred, due to their political affiliations, to positions that were "unreasonably inferior" to their former positions. Further, said plaintiffs received significant salary reductions. Accordingly, they sustain they were victims of political discrimination.

As previously explained in order for a change in the employment conditions to constitute a cause violation of an employee's First Amendment rights, defendants' actions must be sufficiently severe to reach the threshold of "unreasonable inferior" established by *Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209. The Court agrees with the Magistrate Judge that these plaintiffs suffered changes which were severe enough to constitute a violation of their constitutional rights.

**Lisbette Valverdi Surís** established she is an active member of the NPP who had prior thereto participated in several political activities, worked as an electoral college functionary and had been a member of several NPP advance political teams. She established that her salary was withheld until she was assigned to a work station. She further established that, although she was told that at the Human Resources Office where she had been reinstated, there was nothing for her to do, a new employee, Ana Medina, was appointed to perform some of the her duties. She then was transferred to the Public Library where she was informed that a secretary (her previous position) was not needed and was assigned duties of a librarian aide. She also proved her salary was reduced.

According to defendants, Lisbette Valverdi Surís was transferred because she was the secretary with less seniority at the Human Resources Office. However, this statement is contested by the plaintiffs who sustain that Norma Irizarry Vélez, a PDP follower, had less seniority than plaintiff. Defendants aver that, after transferring Valverdi to another position, the salary received by her on her previous position was higher than the one allowed for the newly assigned position. The salary was then adjusted to the appropriate level. Although no evidence was provided to support their contention, defendants sustain a hearing was held. However, as mentioned earlier, this fact if established, standing by itself, would not necessarily discard the discrimination claim.

Plaintiff **Marissa Ramírez Negrón** also established she was an active member of the NPP who was part of former Mayor's advance team and worked as a voter mobilizer. She was and Administrative Assistant who was deprived of her duties once she was transferred to the Library to work as a librarian. She stated at her deposition, uncontested by defendants, that during a conversation with Mr José Rosado, the new head of the Interagency Coordination Office, she was advised she was to be removed due to her political affiliation. However, due to her personal relationship with him (they graduated from high school together), she could choose between three (3) departments to be transferred. Defendant contends her salary reduction was

because she was receiving a salary that did not correspond to her career position. Defendants sustain they informed her that her salary would be reduced because she failed to produce justification of her salary level. She was provided with a hearing, although defendants they failed to establish that in fact the hearing took place. Notwithstanding this fact, if defendants establish the holding of said hearing, her due process claim would be foreclosed but not necessarily the claim for political discrimination.

Plaintiff **Marisol Sanabria Irizarry** established she is an affiliate to the NPP who was a member of the advance political team of former Mayor Llantín and had worked prior thereto as an electoral college functionary since attaining legal age. She was transferred from City Hall to the Recycling Office where an assistant with a scientific background was solicited. Further, her salary was reduced allegedly because it was not warranted by her position. Defendants further sustain, but did not establish, she was afforded a hearing. Again, this only means the Municipality, if defendants establish the hearing took place, provided her with due process. However, the Court must still determine if her constitutional First Amendment rights were violated.

These three (3) plaintiffs have clearly established a prima facie case of discrimination. They all were active members of the NPP, who, *inter alia*, participated as electoral college functionaries and were members of advance political teams for candidates of the NPP. After defendant Negrón Irizarry, the candidate for the PDP, won the elections and took office, these plaintiffs were transferred from their positions and their salaries were reduced. Their transfer constituted a radical change from the functions they used to perform. Clearly reaching the "unreason-

able inferior" threshold established in *Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209. Further, there is evidence in the record, such as conversations where one of the plaintiffs is advised that, due to her political affiliation, she was to be transferred (Maria Ramírez Negrón), or the Mayor's instructions were to transfer these plaintiffs outside of City Hall (Marisol Sanabria Irizarry) from which the Court, examining the entire record in the light most flattering to plaintiffs and indulging all reasonable inferences in their favor, *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d at 581, may infer their transfers and salary reductions responded to political reasons. Accordingly, these plaintiffs successfully established a *prima facie* case of discrimination.

Further, since defendants failed to provide the Court any evidence to support their contention that these plaintiffs, who are career employees, were provided with due process as to their transfers and reductions of salary, the Court finds that they potentially remain with a First Amendment claim. As the Magistrate Judge concluded, the Court finds that genuine issues as to a material facts as to the motivation behind defendants' actions and as to if plaintiffs were provided with due process remains all precluding the issuance of summary judgment. *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d at 677 (Unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment.)

Accordingly, the Magistrate Judge's recommendation is hereby **ADOPTED**. Therefore, defendants' request for summary disposition as to Maria Ramírez Negrón, Marisol Sanabria Irizarry and Lisbette Valverdi is hereby **DENIED**.

Finally, as to **María del Carmen Vargas Calderón,** an Internal Auditor of the

Municipality, the Magistrate Judge concluded her position is a policy making position, hence, the position falls squarely within the *Elrod–Branti* exception allowing a politically motivated employment action. Accordingly, the Magistrate Judge recommended summary judgment be granted as to this plaintiff.

In their objection, plaintiffs sustain that, under the *Elrod–Branti* doctrine, the threshold inquiry is to determine whether the position at issue relates to partisan political interests or concerns. Should said threshold be surpassed then the next inquiry is whether the responsibilities of the position resemble "a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." *Plaintiffs' Partial Objection to the Honorable Magistrate–Judge Gustavo Gelpi's Report and Recommendation Regarding Defendant's Motion for Summary Judgment* (Docket No. 82, p. 6) *citing Jiménez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 242 (1st Cir., 1986). Plaintiffs aver the Internal Auditor is a position for which political affiliation is clearly not an appropriate requirement since auditing is a science governed by accounting principles which are politically blind. Finally, they contend that whether plaintiff's position was labeled a trust position is irrelevant and the Court must consider the actual functions. The Court agrees and explains.

Plaintiff María Vargas held the position of Internal Auditor. In order to circumvent her claims of political discrimination against defendants, defendants argue her position is protected by the doctrine established under *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and, therefore, can be subjected to a political motivated

dismissal. Defendants assert the position of Internal Auditor is an appointment where political affiliation is an appropriate requirement.

The *Elrod–Branti* doctrine provides an exception for government officials to choose its employees based on political affiliation. The ultimate determination on whether a government position is 'political' presents a question of law for the Court rather than an issue of fact for jury resolution. *Mc Gurrin Ehrhard v. Connolly*, 867 F.2d 92, 93 (1st Cir., 1989). The fact that Puerto Rican law has designated the position as one of "trust" is not dispositive as to the federal question. Although Puerto Rico characterization is entitled to deference, *Duriex–Gauthier v. Lopez–Nieves*, 274 F.3d 4, 8 (1st Cir., 2001) citing *Roldan–Plumey v. Cerezo–Suarez*, 115 F.3d 58, 64–65 (1st Cir., 1997), labels may be under inclusive or over inclusive. *Branti v. Finkel*, 445 U.S. at 518, 100 S.Ct. 1287. "[T]he ultimate inquiry [ . . . ] is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Id. The job description is the best source for determining the inherent functions of the position. *Roldan–Plumey v. Cerezo–Suarez*, 115 F.3d at 62. The duties of the job shall prevail over the title. *Duriex–Gauthier v. Lopez–Nieves*, 274 F.3d at 8 citing *Flynn v. City of Boston*, 140 F.3d 42, 44 (1st Cir., 1998).

In sum, the ultimate inquiry is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel* 445 U.S. at 518, 100 S.Ct. 1287. "That an employee is in a policy-making or confidential position remains relevant to the ultimate inquiry, but is no longer dispositive." *Jiménez Fuentes v. Torres Gaztambide,*

807 F.2d at 240 citing *Meeks v. Grimes,* 779 F.2d 417, 420 (7th Cir., 1985).

■ The First Circuit has described a two prong test to determine whether the hiring authority can demonstrate that the party affiliation is an appropriate requirement for the effective performance of the position involved. *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d at 241–242. First, a threshold inquiry "involves examining whether the position at issue, no matter how policy-influencing or confidential it may be, relates to 'partisan political interests ... [or] concerns' " Id. quoting *Branti v. Finkel* 445 U.S. at 519, 100 S.Ct. 1287. In other words, the Court must determine whether "the position involves government decision making on issues where there is room for political disagreement on goals or their implementation." *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d at 241–242. Second, the Court must "examine the particular responsibilities of the position to determine whether it resembles a policymaker privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." *Id.* at 242.

■ The ultimate question is whether the Internal Auditor position held by María Vargas is one in which political affiliation is a reasonably necessary requirement. If that is the case, the position is then an exception to the *Branti–Elrod* standard. For an office to be under the umbrella of the *Branti–Elrod* exception, it

must pass a two step test established by *Jiménez–Fuentes v.Torres Gaztambide,* 807 F.2d 236 (1st Cir., 1986):(1) the office in question must be related to "partisan political interest [ ... or] concerns" *Branti,* 445 U.S. at 519, 100 S.Ct. 1287, and; (2) the Court must examine the "inherent powers and privileges of the position [and] determine whether [the position] resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." *Jiménez–Fuentes,* 807 F.2d at 243–244.

The position of Internal Auditor is a technical job that should not be subjected to political influence. An auditor is "a state official whose duty is to examine the accounts of state agencies to determine if expenditures were made in accordance with authorizations by the legislature." *Black's Law Dictionary,* 6th ed, West Pub Co, St. Paul, 1990, p 131. The function of an Internal Auditor is purely to ensure compliance with the law. Once the law has been established, political sentiments cannot color its meaning with their passions. As aforementioned, the Magistrate Judge concluded the position of Internal Auditor is a policymaking position as defined under the second test of the *Jiménez Fuentes* test. **This Court disagrees.**

An Internal Auditor merely enforces procedural rules, ordinances, laws, and resolutions enacted by the Controller of Puerto Rico, the Municipal Assembly, and/or Legislature.[17] This Court agrees

---

**17.** The Internal Auditor's duties are described as follows: "(a) Perform audits and control all municipal public funds operations;(b) Supervise the acquisition, use and disposal of municipal property with the **purpose of verifying and corroborating that it is being done pursuant to the applicable laws, ordinances, and resolutions;** (c) Perform audits of the transactions and operations of the

municipal administrative units and dependencies, in order to **determine if they have performed their activities and operation according to the laws, ordinances, resolutions and regulations in effect;** (d) Examine all accounts, books, registers, contracts, budgets, and any other financial activities and transactions of the administrative units; (e) Render reports to the Mayor at least every three

with the First Circuit in that the position of Internal Auditor "is a non-political technical one. There are no policymaking decisions involved." *Cordero v. De Jesús–Méndez,* 867 F.2d 1, 17 (1st Cir., 1989). "The Internal Auditor [ . . . ]is a technocrat and nothing more." *Id.* at 18. Therefore, this position does not classify as an exception to the *Elrod–Branti* doctrine.

Accordingly, the Court rejects the Magistrate Judge's recommendation as to plaintiff María del Carmen Vargas. Therefore, defendants' request for summary disposition as to María del Carmen Vargas is hereby **DENIED.**

### IV. Plaintiffs' Claims against co-defendant Ramón Luis Segarra and José Nazario.

Defendants contend plaintiffs have not presented any specific evidence to establish Nazario's and Segarra's personal involvement in the alleged adverse employment decisions. Accordingly, the complaint against them should be dismissed. Plaintiffs agree with defendants that the action against José Nazario should be dismissed. Accordingly, the

Court hereby **DISMISSES** all claims against co-defendant José Santiago.

As to Segarra, the Magistrate Judge concluded Segarra, as Human Resources/Personnel Director, "would logically be expected to [being] involved in the decisions regarding the hiring and termination of Municipal employees." *Magistrate Judge's Report and Recommendation* (Docket No. 81, pg. 18).

Defendants objected to the Magistrate Judge's determination claiming plaintiffs failed to bring forth evidence to demonstrate their claims against Segarra. The Court agrees.

"[A]n absence of evidence on a critical issue weighs against the party—be it the movant or the nonmovant—who would bear the burden of proof on that issue at trial." *Perez v. Volvo Car Corp.,* 247 F.3d 303, 310 (1st Cir., 2001) citing *Torres Vargas v. Santiago Cummings,* 149 F.3d 29, 35–36 (1st Cir.1998); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990).

■ In the instant case, besides the fact Segarra is the Human Resources/ Per-

(3) months, on the result of the audits performed, and make any recommendation he/she deems necessary and convenient to ensure that the municipal resources are used for public ends in the most efficient way, and with an optimum yield or profit. He/she shall also comply with the provisions of § 4253(k) of this title['Render a report to the Mayor who shall remit it to the Assembly to be read by the Secretary thereof in a regular session. Said report shall include the achievements in the developments of the plans and programs, the projections of the administrative units and the areas or aspects that need to be bolstered to achieve said projections']; (f) Advise the Mayor and the directors of the administrative units on fiscal and operational procedures, the establishment and improvement of internal controls, and **compliance with laws, ordinance, resolutions, and regulations in general;** (g) Evaluate and study the recommendations of the controller's audit reports and any other audit

report related to the municipality, and offer advice to the directors of the administrative units regarding the actions that should be take to handle or apply such recommendations; (h) Give follow up to the directors of administrative units for them to comply with or **implement the recommendations of the Controller of Puerto Rico,** in the administrative units under their direction or responsibility; (i) Evaluate from time to time, the computerized accounting systems and the compliance with the internal controls that are established, to determine their effectiveness and ensure the protection of the municipal assets against loss, fraud, or inefficient use or disposal; (j) Promote the exactness and reliability of the accounting and operational data and judge the efficiency of all the operational units of the municipality; (k) Perform any other function established by law or which is assigned by the Mayor." 21 P.R. Laws Ann. § 4254. *Emphasis added.*

sonnel of the Municipality, plaintiffs have failed to provide any evidence of Segarra's alleged violation of plaintiffs' constitutional rights. Other than plaintiffs' empty allegations stating Segarra is the personnel director and as such "it is unthinkable that he had nothing to do with the massive non renewal of Law 52 employment contracts" *Plaintiffs' Memorandum in Support of their opposition to Defendants' Motion for Summary Judgment* (Docket No. 75, p. 22) and the conclusory statement "most if not all personnel actions carried out by defendant Isidro Negrón Irizarry since swearing in as Mayor of San Germán have been taken in cahoots with defendant Ramón Luis Segarra," *Complaint* (Docket No. 1 p. 4)plaintiffs have failed to provide the Court with evidence to support their contentions. At this stage of the proceedings, conclusory allegations are insufficient to defeat defendants' request for summary disposition as to Segarra. For this reason, the Court **REJECTS** the Magistrate Judge's Report and Recommendation and **GRANTS** defendants' motion for summary judgment as to co-defendant Ramón Luis Segarra. Accordingly, all plaintiffs' claims against co-defendant Segarra are hereby dismissed.[18]

### V.  Conclusion

For the reasons aforementioned, the Court hereby ADOPTS in part the Magistrate Judge's Report and Recommendation. As such the court request for summary *disposition is summarized below:*

**A.  Law 52 employees:**

1. The Court **DENIES** summary disposition as to plaintiffs (1)Juan Jusino Amely, (2)Nélida Báez Pérez, (3)Sylvia Flores Morales, (4)Santos Olivera Rivera, (5) Jesselle Justiniano Rosario, (6) Marla Colón Johnson, (7) Jose Luis Berrocales Baez, (8) Felipe Vélez Valle and (9) Nery Casiano.

2. The Court **GRANTS** defendants' motion for summary judgment as to plaintiffs (1)Santos Ayala Melero, (2)Elliot Colón Johnson, (3) Julia Madera Tirado and (4)Carlos Cruz Baez. Accordingly, these plaintiffs' claims against defendants are hereby **DISMISSED.**

3. The Court **DENIES** defendants' request for summary disposition based on the qualified immunity doctrine as to Law 52 had been decided since at least as early as 1987, *Cheveras Pacheco v. Rivera González,* 809 F.2d at 127–129.

**B.  Temporary Employees:**

1. The Court **GRANTS** defendants' motion for summary judgement as to plaintiff Carmen Bonilla. Accordingly, Carmen Bonilla's claims against defendants are hereby **DISMISSED.**

2. The Court **DENIES** defendants' motion for summary judgement as to plaintiff Pedro Irizarry Bonilla.

**C.  Career Employees:**

1. The Court **GRANTS** defendants' request for summary judgment as to plaintiff Felix Casiano Rodríguez. Accordingly, Casiano Rodríguez's claims against defendants are hereby **DISMISSED.**

2. The Court **DENIES,** defendants' request for summary disposition as to plaintiffs María Ramírez Negrón, Marisol Sanabria Irizarry and Lisbette Valverdi.

3. The Court **DENIES** defendants' request for summary disposition as to plaintiff's Auditor María del Carmen Vargas.

---

18.  Perhaps the court has been in the forest and has not seen the individual trees. The court is willing to entertain a motion to re- consider should the court "have missed the boat."

**D. Plaintiffs claims against certain co-defendants**

1. The Court **GRANTS** defendants' request for summary disposition as to all claims against co-defendants José Santiago and Ramón Luis Segarra. Accordingly, the Court hereby **DISMISSES** all claims against these co-defendants.

**IT IS SO ORDERED.**